**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| LG CONSTRUCTION GROUP, LLC; and LAURA RICKETTS, as the sole beneficiary with power of direction under the Trust Agreement dated April 15, 2010 and known as Trust No. 8002354843, | ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Allied World National Assurance Company, Inc. ("Allied World"), by and through its counsel, for its Complaint for Declaratory Judgment against Defendants, LG Construction Group, LLC ("LG"), and Laura Ricketts ("Ricketts"), as sole beneficiary with power of direction under the Trust Agreement dated April 15, 2010 and known as Trust No. 8002354843 ("Trust"), states as follows:

## INTRODUCTION

1.       Pursuant to 28 U.S.C. §§ 2201 and 2202, Allied World seeks a declaratory judgment that it does not have a duty to indemnify LG under commercial general liability and commercial umbrella liability insurance policies relative to an arbitration proceeding captioned *Laura Ricketts, as the sole beneficiary with power of direction under the Trust Agreement dated April 15, 2020 and known as Trust No. 8002354843, of which Chicago Title Land Trust Company is Trustee v. LG Construction Group LLC*, No. 01-19-0002-4280-1, pending before the American Arbitration Association (the "Arbitration").

2.     Ricketts contracted LG to serve as the general contractor for the construction of a new and custom-built, luxury single-family home located at 430 North Sheridan Road, Wilmette, Illinois (the "Property" or "Project").

3.     Ricketts claims that upon moving into the Property in the Summer of 2015, construction of the Property was not complete, and claims that by the Summer of 2016, the Property was riddled with significant construction defects.  As a result, Ricketts filed the Arbitration against LG, claiming that LG breached its contract with Ricketts and seeking to hold LG liable for its faulty workmanship in defectively constructing the Property.

4.     LG seeks indemnification from Allied World under a commercial general liability policy and a commercial umbrella liability policy for the liability LG faces in the Arbitration.

5.     The Allied World policies only potentially provide coverage, in relevant part, for those sums that LG is legally obligated to pay as damages because of "property damage" caused by an "occurrence" and the "property damage" takes place during the Allied World policies' policy period.

6.     Ricketts does not seek to hold LG liable in the Arbitration for damage to property other than to LG's own work.  In particular, Ricketts seeks to hold LG liable for the cost to remediate the construction defects caused by LG's faulty workmanship.  These costs, however, do not constitute "property damage" caused by an "occurrence."

7.     In addition, the construction defects resulting from LG's faulty workmanship were discovered by Ricketts, at the latest, in the Summer of 2016.  The Allied World policies did not incept, however, until January 24, 2018.  Thus, the damage LG faces liability for in the Arbitration did not occur during the Allied World policies' policy period.

8.     Further, the Allied World policies also include various policy exclusions that apply

to further preclude coverage for the Arbitration.

9.      Because LG faces liability solely for amounts to repair and remediate its defective construction of the Property, which occurred prior to the inception of the Allied World policies, Allied World owes no indemnity obligation to LG in connection with the Arbitration.

10.     Accordingly, a real, substantial, and justiciable controversy exists between Allied World and LG with respect to Allied World's rights, duties, and obligations under the Allied World commercial general liability and commercial umbrella liability policies relative to the Arbitration, which is subject to resolution by this Court under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11.     Plaintiff Allied World is a New Hampshire corporation with its principal place of business in New York, New York.

12.     Defendant LG is an Illinois limited liability company.  Its member is LG Development Group LLC.  LG Development Group LLC is an Illinois limited liability company. Its members are Brian, Foldberg, Matt Wilke, Cuda Development Group LLC, and ML Development Group LLC.  Brian Goldberg and Matt Wilke are Illinois residents and, therefore, Illinois citizens.  Cuda Development Group LLC is an Illinois limited liability company.  Its member is Barry Howard.  Barry Howard is an Illinois resident and, therefore, an Illinois citizen. Consequently, Cuda Development Group LLC is an Illinois citizen.  ML Development Group LLC is an Illinois limited liability company.  Its member is Marc Lifshin.  Marc Lifshin is an Illinois resident and, therefore, an Illinois citizen.  Consequently, ML Development Group LLC is an Illinois citizen.  Consequently, as all of its members are Illinois citizens, LG is an Illinois citizen.

13.     Defendant Ricketts is a natural person and citizen of the State of Illinois and is the

3

sole beneficiary with power of direction under the Trust.

14.     At all times relevant, the Trust held title to the Property, which is located at 430 Sheridan Road, Wilmette, Illinois.

15.     Ricketts is the underlying claimant in the Arbitration and has named LG as the respondent in the Arbitration.  Ricketts is named in this declaratory judgment action as a nominal defendant from whom no relief is sought other than that she be bound by the judgment sought herein.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 1332 as complete diversity of citizenship exists between the parties, the matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000), and an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the alleged events and omissions giving rise to this action occurred in this district, and because Defendants are subject to this Court's jurisdiction.

## FACTUAL BACKGROUND

**A.      The LG Contract**

18.     On or around June 20, 2011, Ricketts contracted Morgante Wilson Architects, Ltd. to design the Project.

19.     On or around September 29, 2012, Ricketts contracted LG to serve as the general contractor for the construction of the Project (the "LG Contract", a copy of which is attached as Exhibit A).

20.     The LG Contract provides that LG shall perform all work on the Project, as

described in the Contract Documents, except to the extent specifically indicated in the LG Contract.  (Ex. A, AWNAC000002.)

21.     The LG Contract also provides that LG "shall supervise and direct the Work, using [LG's] best skill and attention" and that LG "shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Work under the [LG Contract], unless the Contract Documents give other specific instructions concerning these matters." (Ex. A, AWNAC000007.)

22.     The LG Contract provides that construction of the Project was to begin on September 26, 2012, or seven calendar days after the issuance of the building permit by the Village of Wilmette, whichever is later.  (Ex. A, AWNAC000002.)

23.     The LG Contract provides that the Project was set to achieve Substantial Completion within 548 days of commencement of the work.  (Ex. A, AWNAC000002.)

**B.     The Arbitration**

24.     On August 1, 2019, Ricketts filed a Demand for Arbitration against LG.

25.     On August 27, 2021, Ricketts filed a First Amended Demand for Arbitration.

26.     On November 7, 2022, Ricketts filed the operative Second Amended Demand for Arbitration (the "Amended Demand", a copy of which is attached as Exhibit B).

27.     The Amended Demand alleges that in September of 2012, Ricketts and LG entered into the LG Contract.  (Ex. B, AWNAC000055.)

28.     The Amended Demand alleges, on information and belief, that LG engaged a related company which shares LG's personnel and business address, LG Construction + Development, to assist LG with the management and construction of the Project. (Ex. B, AWNAC000062.)

29.     The Amended Demand alleges that both LG and LG Construction + Development, on behalf of and acting with the full authority of LG, entered into subcontracts with various trades, vendors, and suppliers to perform work at and for the Project.  (Ex. B, AWNAC000062-63.)

30.     The Amended Demand alleges that LG was required to construct the Project in accordance with industry standards associated with and required in the construction of a new high-quality, luxury single-family residential home.  (Ex. B, AWNAC000060.)

31.     The Amended Demand alleges that LG's work, however, did not comply with the requirements of the LG Contract in that it was "defective" and "remains incomplete." (Ex. B, AWNAC000062.)

32.     The Amended Demand alleges that LG breached the LG Contract by failing to perform work in accordance with the LG Contract; perform work consistent with what a contractor would construct when making a "luxury single-family residence;" perform work using LG's best skill and attention; construct the Project in a workmanlike manner; construct the Project in a manner to make "parts fit together properly;" correct work that did not conform with the requirements of the contract documents; employ, coordinate, or oversee fit persons or persons skilled in tasks assigned to them; properly account for credits due and owing to Ricketts; and properly coordinate the work being performed. (Ex. B, AWNAC000065-66.)

33.     The Amended Demand alleges LG's failure to properly construct, manage, coordinate, and complete construction of the Project in accordance with the Project Contract Documents and industry standards, customs, and practices led to "defects, omissions, and lack of coordination in the performance of the Work," resulting in a delay in the progression and completion of work for the Project.  (Ex. B, AWNAC000055-56, AWNAC000063.)

34.     The Amended Demand alleges that, despite contracting LG in September of 2012

to construct the Project, the Project was still incomplete in the late Summer of 2015, when Ricketts moved into the Property.  The Amended Demand alleges, however, that LG and Ricketts agreed that LG would continue constructing the Project to completion. (Ex. B, AWNAC000055, AWNAC000063-64.)

35.     The Amended Demand alleges that, in the Summer of 2016, and because of LG's numerous failures, Ricketts received a home that was "riddled with multiple defects and unfinished work affecting virtually every room and every system in the home." (Ex. B, AWNAC000055-56.)

36.     The Amended Demand alleges that LG's defective and/or incomplete work includes: defective millwork, defective painting and wall finishes, improperly installed windows and doors, defective flooring, improperly installed radiant floor heating, improperly performed electrical work, improperly installed interior and exterior plumbing and drainage, improperly installed exterior roofing and membranes, improperly constructed exterior kitchen and three-season porch, defective carpentry, failed and missing flashing, improperly installed stone work, defective tiling, defective HVAC systems, defective pool finishing and tiling, and improperly installed skylights.  (Ex. B, AWNAC000056.)

37.     The Amended Demand alleges that some of the construction defects were so extensive that Ricketts and her family became concerned about health and safety issues.  (Ex. B, AWNAC000056.)

38.     The Amended Demand alleges that as a result of the numerous defects, unfinished work, and safety and health concerns, it will cost millions of dollars to remediate the damages and bring the Property back to the condition LG was contractually required to provide. (Ex. B, AWNAC000057.)

39.     The Amended Demand asserts a single cause of action against LG for Breach of Contract, alleging that the LG Contract is a valid and enforceable contract, that Ricketts performed her obligations under it, and that LG breached it in numerous ways, including "failing to perform the Work in accordance with the Contract Documents." (Ex. B, AWNAC000064-82.)

40.     The Amended Demand alleges that Ricketts "has been damaged by LG's defective Work and its failure to perform the Work in accordance with the [LG Contract] and in accordance with industry standards, customs, and practice" and Ricketts will "continue to incur significant costs to remediate and repair the defects and deficiencies to the Project caused by LG." (Ex. B, AWNAC000080.)

41.     The Amended Demand alleges that Ricketts has been further damaged in that she already paid for various remediation services with respect to the HVAC and water infiltration at the Property. (Ex. B, AWNAC000081.)

42.     The Amended Demand alleges that, as a direct and proximate result of LG's breaches of the LG Contract, Ricketts has identified damages "due to LG's defective Work," which include costs related to amounts necessary to "complete and/or correct" LG's defective work and/or defective work performed at LG's direction and has been damaged in an amount in excess of $10 million.  (Ex. B, AWNAC000081.)

43.     The Amended Demand alleges that Ricketts is entitled to damages "as a result of LG's breach of the" LG Contract. (Ex. B, AWNAC000081.)

44.     The Arbitration is close to conclusion, and a ruling by the arbitration panel presiding over the Arbitration is expected in the near term.

## THE ALLIED WORLD POLICIES

**A.    The Allied World CGL Policy**

45.    Allied World issued to Goldberg Development LLC Commercial General Liability policy no. 0311-1547, effective January 24, 2018 to January 24, 2019, with limits of $1,000,000 per occurrence and $10,000,000 in the general aggregate (the "Allied World CGL Policy", a copy of which is attached as Exhibit C.)

46.    LG is an Insured pursuant to the terms of the Allied World CGL Policy.

47.    The Allied World CGL Policy potentially provides coverage, in relevant part, only for those sums that LG is legally obligated to pay as damages because of "property damage" caused by an "occurrence" and the "property damage" occurs during the Allied World CGL Policy's policy period:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.    Insuring Agreement**
>
> > **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> >
> > > **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
> > >
> > > **(2)**    Our right and duty to defend ends when we

have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\*    \*    \*

(Ex. C, AWNAC000088.)

48. Coverage under the Allied World CGL Policy is subject to Exclusion b. Contractual Liability, which provides, in relevant part, that the Allied World CGL Policy does not provide coverage for "property damage" for which LG is obligated to pay damages by reason of the assumption of liability in a contract or agreement:

**2. Exclusions**

This insurance does not apply to:

\*      \*      \*

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(Ex. C, AWNAC000089.)

49. Coverage under the Allied World CGL Policy is subject to Exclusion j. Damage to Property, subparagraphs (5) and (6), which provide, in relevant part, that the Allied World CGL Policy does not provide coverage for "property damage" (1) to that particular part of real property

on which LG or any contractors or subcontractors working directly or indirectly on LG's behalf are performing operations; or (2) to that particular part of any property that must be restored, repaired or replaced because LG's work was incorrectly performed on it:

    **2.**    **Exclusions**

This insurance does not apply to:

*     *     *

    **j.**    **Damage To Property**

"Property damage" to:

*     *     *

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

*     *     *

Paragraphs (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

(Ex. C, AWNAC000091-92.)

    50.    Coverage under the Allied World CGL Policy is subject to Exclusion k. Damage to Your Product, which provides, in relevant part, that the Allied World CGL Policy does not provide coverage for "property damage" to LG's product arising out of it or any part of it:

    **2.**    **Exclusions**

This insurance does not apply to:

\*       \*       \*

**k.     Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

(Ex. C, AWNAC000092.)

51.     Coverage under the Allied World CGL Policy is subject to Exclusion m. Damage to Impaired Property, which provides, in relevant part, that the Allied World CGL Policy does not provide coverage, in relevant part, for "property damage" to "impaired property" or property that has not been physically injured, arising out of (1) a defect, deficiency, inadequacy, or dangerous condition in LG's product or LG's work; or (2) a delay or failure by LG or anyone acting on LG's behalf to perform a contract or agreement in accordance with its terms:

**2.     Exclusions**

This insurance does not apply to:

\*       \*       \*

**m.     Damage To Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(Ex. C, AWNAC000092.)

52.     The Allied World CGL Policy also includes a Fungi Or Bacteria Exclusion endorsement, which precludes coverage under the Allied World CGL Policy, in relevant part, for (1) "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; and (2) any loss, cost or expenses arising out of abatement, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by LG or any other person or entity:

### FUNGI OR BACTERIA EXCLUSION

*     *     *

**A.**     The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.**     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

      **b.**      Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

\*      \*      \*

(Ex. C, AWNAC000125.)

53.    The Allied World CGL Policy defines "impaired property" as:

      **8.**      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      **a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      **b.**      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

(Ex. C, AWNAC000100.)

54.    The Allied World CGL Policy defines "insured contract," in relevant part, as:

      **9.**      "Insured contract" means:

\*      \*      \*

      **f.**      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means

a liability that would be imposed by law in the absence of any contract or agreement.

\* \* \*

(Ex. C, AWNAC000101.)

55. The Allied World CGL Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. C, AWNAC000102.)

56. The Allied World CGL Policy defines "products-completed operations hazard," in relevant part, to include all "property damage" occurring away from premises LG owns or rents and arising out of LG's product or LG's work except for (1) products that are still in LG's physical possession; or (2) work that has not yet been completed or abandoned:

> **16.** "Products-completed operations hazard":
>
> **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> > **(1)** Products that are still in your physical possession; or
> >
> > **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
> >
> > > **(a)** When all of the work called for in your contract has been completed.
> > >
> > > **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> > >
> > > **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same

> project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
> *        *        *

(Ex. C, AWNAC000102.)

57.    The Allied World CGL Policy defines "property damage," in relevant part, as (1) physical injury to tangible property; and (2) loss of use of tangible property that is not physically injured:

> **16.**    "Property damage" means:
>
> **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> *        *        *

(Ex. C, AWNAC000102-103.)

58.    The Allied World CGL Policy defines "your product" as:

> **21.**    "Your product":
>
> **a.**    Means:
>
> **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
> **(a)**    You;
>
> **(b)**    Others trading under your name; or
>
> **(c)**    A person or organization whose business or assets you have acquired;

and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

(Ex. C, AWNAC000103.)

59. The Allied World CGL Policy defines "your work" as:

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

(Ex. C, AWNAC000103.)

60.     The Allied World CGL Policy defines "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi." (Ex. C, AWNAC000125.)

**B.      The Allied World Umbrella Policy**

61.     Allied World issued to Goldberg Development LLC Umbrella General Liability policy no. 0311-1548, effective January 24, 2018 to January 24, 2019, with limits of $10,000,000 per occurrence and $10,000,000 in the general aggregate subject to a $10,000 self-insured retention (the "Allied World Umbrella Policy", a copy of which is attached as Exhibit D.)

62.     LG is an Insured pursuant to the terms of the Allied World Umbrella Policy.

63.     The Allied World Umbrella Policy potentially provides coverage, in relevant part, only for those sums in excess of the **Retained Limit** that LG becomes legally obligated to pay as damages by reason of liability imposed by law because of **Property Damage** caused by an **Occurrence** and the **Property Damage** occurs during the Allied World Umbrella Policy's **Policy Period**:

I.      **INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY**

A.      We will pay on behalf of the Insured those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section III., "Limits of Insurance."

B.      This policy applies, only if:

1.      the **Bodily Inju**ry or **Property Damage** is

19

caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2.    the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

\*    \*    \*

(Ex. D, AWNAC000209.)

64.    Allied World owes no obligations under the Allied World Umbrella Policy, if any, unless and until the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** has been exhausted by the payment of the **Loss**, or the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies:

### III.    LIMITS OF INSURANCE

\*    \*    \*

J.    We will not make any payment under this policy unless and until:

1.    the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** has been exhausted by the payment of **Loss**; or

2.    the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

\*    \*    \*

(Ex. D, AWNAC000212.)

65.    Coverage under the Allied World Umbrella Policy is subject to a Fungus Exclusion endorsement, which precludes coverage under the Allied World Umbrella Policy, in relevant part, for **Property Damage** arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by: (1) any **Fungus(i)**, **Mold(s)**, mildew or yeast; (2) any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast; (3)  any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast; or (4) any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that **Loss**, injury, damage, cost or expense:

### FUNGUS EXCLUSION

A.    It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Fungus**

This policy does not provide coverage for **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** or any other **Loss**, injury, damage, cost or expense, including but not limited to, **Losses**, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

a.    Any **Fungus(i)**, **Mold(s)**, mildew or yeast;

b.    Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast;

c.    Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast; or

d.    Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that **Loss**, injury, damage, cost or expense.

\*       \*       \*

(Ex. D, AWNAC000177.)

66.    Coverage under the Allied World Umbrella Policy is subject to a Contractors' Limitation endorsement, which precludes coverage, in relevant part, for **Property Damage** to property being installed, erected, or worked upon by LG or by any agents or subcontractors of LG; or any liability assumed by LG under any contract or agreement:

## CONTRACTORS' LIMITATION

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Contractors**

This policy does not provide coverage for:

\*       \*       \*

2.    **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**;

\*       \*       \*

6. Any liability assumed by the **Insured** under any contract or agreement.

Paragraphs 5 and 6 of this endorsement will not apply if coverage is provided for such **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions, and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage proved by **Scheduled Underlying Insurance**.

(Ex. D, AWNAC000179.)

67. Coverage under the Allied World Umbrella Policy is subject to an Exterior Insulation and Finishing Systems (EFIS) Exclusion, which precludes coverage, in relevant part, for **Property Damage** included within the **Products-Completed Operations Hazard** arising in whole or in part out of the design, manufacture, construction fabrication, preparation, installation, application, maintenance, or repair, including remodeling, service, correction or replacement, of any **Exterior Insulation and Finish System** (EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system:

### EXTERIOR INSULATION AND FINISHING SYSTEMS (EFIS) EXCLUSION

It is agreed that the following paragraph is added under Section IV., "Exclusions":

**Exterior Insulation and Finish Systems**

This policy does not apply for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury**, included within the **Products-Completed Operations Hazard** arising in whole or in part out of the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair,

including remodeling, service, correction or replacement, of any **Exterior Insulation and Finish System** (EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system.

\*       \*       \*

(Ex. D, AWNAC000181.)

68.    Coverage under the Allied World Umbrella Policy is also subject to a Residential

Construction Operations Exclusion (With Limitation for Scheduled Projects), which precludes

coverage, in relevant part, for any liability arising out of **Residential Construction Operations**,

whether or not the **Residential Construction Operations** have been completed or are ongoing:

**RESIDENTIAL CONSTRUCTION OPERATIONS
EXCLUSION
(WITH LIMITATION FOR SCHEDULED PROJECTS)**

It is agreed that this policy is amended as follows:

Section **IV. EXCLUSIONS** is amended to include the following additional exclusion:

**Residential Construction Operations**

This policy does not provide coverage for any liability arising out of **Residential Construction Operations.** This exclusion applies whether or not the **Residential Construction Operations** have been completed or are ongoing.

\*       \*       \*

(Ex. D, AWNAC000206.)

69.    Coverage under the Allied World Umbrella Policy is also subject to Exclusion C.

Contractual Liability, which provides, in relevant part, that the Allied World Umbrella Policy

does not provide coverage for **Property Damage** for which LG is obligated to pay damages by

reason of the assumption of liability in a contract or agreement:

IV.    EXCLUSIONS

\*       \*       \*

C.      **Contractual Liability**

This policy does not provide coverage for any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.      that the **Insured** would have in the absence of a contract or agreement; or

2.      assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

a.      liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

b.      such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

(Ex. D, AWNAC000213-214.)

70.      The Allied World Umbrella Policy also includes Exclusion D. Damage to Impaired Property or Property Not Physically Injured, which provides that the Allied World Umbrella Policy does not provide coverage, in relevant part, for **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of (1) a defect, deficiency,

inadequacy, or dangerous condition in LG's product or LG's work; or (2) a delay or failure by LG or anyone acting on LG's behalf to perform a contract or agreement in accordance with its terms:

**IV.    EXCLUSIONS**

\*         \*         \*

        D.    **Damage To Impaired Property or Property Not Physically Injured**

This policy does not provide coverage for **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.    A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

(Ex. D, AWNAC000214.)

71.    Coverage under the Allied World Umbrella Policy is subject to Exclusion E. Damage to Property, subparagraphs (5) and (6), which provide, in relevant part, that the Allied World Umbrella Policy does not provide coverage for **Property Damage** (1) to that particular part of real property on which LG or any contractors or subcontractors working directly or indirectly on LG's behalf are performing operations; or (2) to that particular part of any property that must be restored, repaired or replaced because LG's work was incorrectly performed on it:

**IV.    EXCLUSIONS**

\*         \*         \*

E. **Damage to Property**

This policy does not provide coverage for **Property Damage** to:

\* \* \*

5. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

\* \* \*

Subparagraph 6. of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

(Ex. D, AWNAC000214.)

72. Coverage under the Allied World Umbrella Policy is subject to Exclusion F. Damage to Your Product, which provides, in relevant part, that the Allied World Umbrella Policy does not provide coverage for **Property Damage** to LG's product arising out of it or any part of it:

**IV. EXCLUSIONS**

\* \* \*

F. **Damage to Your Product**

This policy does not provide coverage for **Property Damage** to **Your Product** arising out of it or any part of it.

(Ex. D, AWNAC000214.)

73.    The Allied Work Umbrella Policy defines **Fungus(i)** as "any of the plants or organisms belonging to the major group **Fungi**, lacking chlorophyll, and including **molds**, rusts, mildew, smuts and mushrooms."  (Ex. D, AWNAC000177.)

74.    The Allied Work Umbrella Policy defines **Mold(s)** as "any superficial growth produced on damp or decaying organic matter or on living organisms, and **Fungi** that produce **molds**."  (Ex. D, AWNAC000177.)

75.    The Allied World Umbrella Policy defines **Spore(s)** as "any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms."  (Ex. D, AWNAC000177.)

76.    The Allied World Umbrella Policy defines **Exterior Insulation and Finish System** as:

### EXTERIOR INSULATION AND FINISHING SYSTEMS (EFIS) EXCLUSION

*       *       *

**"Exterior Insulation and Finish System"** means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and typically consisting of:

1.    A rigid or semi-rigid insulation board made of polystyrene, polysisacyanurate foam and/or other materials;

2.    The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3.    A reinforced or unreinforced base coat;

4.    A finish coat providing surface texture to which color may be added; and

5.    Any flashing, caulking or sealant used with the system for any purpose.

(Ex. D, AWNAC000181.)

77. The Allied World Umbrella Policy defines **Residential Construction Operations** as "any activity by or on behalf of any **Insured**, in any capacity, regarding, related to, or in support of, any construction of detached single family houses, attached single family houses, residential condominiums or residential cooperative."  (Ex. D, AWNAC000206.)

78. The Allied World Umbrella Policy defines **Impaired Property** as:

E. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

(Ex. D, AWNAC000227.)

79. The Allied World Umbrella Policy defines **Insured Contract**, in relevant part, as:

G. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

\*       \*       \*

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

29

        a.       preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        b.       giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      3.       under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

(Ex. D, AWNAC000228-229.)

80.     The Allied World Umbrella Policy defines **Loss** as "those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses." (Ex. D, AWNAC000229.)

81.     The Allied World Umbrella Policy defines **Occurrence**, in relevant part, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. D, AWNAC000231.)

82.     The Allied World Umbrella Policy defines **Products-Completed Operations Hazard**, in relevant part, as follows:

    P.      **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

      1.       products that are still in your physical possession; or

      2.       work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

a.    when all of the work called for in your
contract has been completed;

\*         \*         \*

c.    when that part of the work done at a job site
has been put to its intended use by any person
or organization other than another contractor
or subcontractor working on the same
project. Work that may need service,
maintenance, correction, repair or
replacement, but which is otherwise
complete, will be treated as completed.

\*         \*         \*

(Ex. D, AWNAC000231-232.)

83.    The Allied World Umbrella Policy defines **Property Damage**, in relevant part, as
(1) "physical injury to tangible property, including all resulting loss of use of that property," and
(2) "loss of use of tangible property that is not physically injured." (Ex. D, AWNAC000232.)

84.    The Allied World Umbrella Policy defines **Retained Limit**, in relevant part, as:

R.    **Retained Limit** means the greater of the following amounts:

1.    the total applicable limits of **Scheduled Underlying
Insurance** and any applicable **Other Insurance**
providing coverage to the **Insured**; or

2.    the **Self-Insured Retention** applicable to each
**Occurrence** that results in damages not covered by
**Scheduled Underlying Insurance** nor any
applicable **Other Insurance** providing coverage to
the **Insured**.

\*         \*         \*

(Ex. D, AWNAC000232.)

85.    The Allied World Umbrella Policy defines **Scheduled Underlying Insurance**, in
relevant part, as:

S.    **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy in subparagraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

\*       \*       \*

(Ex. D, AWNAC000232.)

86.     The Allied World Umbrella Policy defines **Self-Insured Retention**, in relevant part, as:

T.      **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

(Ex. D, AWNAC000233.)

87.     The Allied World Umbrella Policy defines **Your Product** as:

V.      **Your Product** means:

1.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a.      you;

b.      others trading under your name; or

c.      a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

      1.       warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

      2.       the providing of or failure to provide warnings or instructions. **Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

(Ex. D, AWNAC000233.)

88.       The Allied World Umbrella Policy defines **Your Work**, in relevant part, as:

W.       **Your Work** means:

      1.       work or operations performed by you or on your behalf; and

      2.       materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

      1.       warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

      2.       the providing of or failure to provide warnings or instructions.

(Ex. D, AWNAC000233.)

## <u>COUNT I – DECLARATORY JUDGMENT</u>
### No Duty to Indemnify – Allied World CGL Policy

89.       Allied World incorporates paragraphs 1-88 as though fully restated herein.

90.       The Allied World CGL Policy potentially provides coverage, in relevant part, only for those sums that LG becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" and the "property damage" occurs during the Allied World CGL Policy's policy period.

91.     "Property damage" is defined by the Allied World CGL Policy, in relevant part, as (1) "[p]hysical injury to tangible property, including all resulting loss of use of that property"; and (2) "[l]oss of use of tangible property that is not physically injured."

92.     "Occurrence" is defined by the Allied World CGL Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

93.     LG seeks coverage under the Allied World CGL Policy for the Arbitration.

94.     The Amended Demand alleges that pursuant to the LG Contract, LG would serve as the general contractor for construction of the Project.

95.     The Amended Demand alleges, however, that LG failed to (1) "properly construct the Project in accordance with the Project Contract Documents;" (2) "properly construct the Project in accordance with the industry standards, customs, and practice;" (3) "properly manage the scheduling and sequencing of the trades for the Project;" (4) "properly coordinate the construction and installation of materials and equipment with the Project Architect, Morgante-Wilson Architects, Ltd.;" (5) "provide, coordinate, and install the proper materials for the Project;" (6) "properly manage the overall work;" and (7) "complete the Project as required." (Ex. B, AWNAC000055-56.)

96.     As a result of LG's alleged faulty workmanship and defective construction of the Project, the Amended Demand alleges that "the Project is riddled with multiple defects and unfinished work affecting virtually every room and every system in the home." (Ex. B, AWNAC000056.)

97.     Consequently, Ricketts claims that LG breached the LG Contract, and Ricketts seeks to hold LG liable for the costs to repair and/or remediate the construction defects caused by LG's and its subcontractors' faulty workmanship in constructing the Project.

98.    The Amended Demand alleges damage only to LG's work in constructing the Property. The Amended Demand does not allege damage to any other property.

99.    Costs to repair and/or replace an insured's faulty workmanship and/or defective construction does not constitute "property damage" caused by an "occurrence," as those terms are defined by the Allied World CGL Policy.

100.    Accordingly, the Arbitration does not seek to hold LG liable for "property damage" caused by an "occurrence," and therefore, Allied World owes no duty to indemnify LG for the Arbitration under the Allied World CGL Policy.

101.    In addition, the Allied World CGL Policy only potentially provides coverage, in relevant part, for damages because of "property damage" caused by an "occurrence" if the "property damage" occurs during the Allied World CGL Policy's policy period.

102.    The Allied World CGL Policy incepted on January 24, 2018, and terminated on January 24, 2019.

103.    The Amended Demand alleges that upon Ricketts moving into the Property in the Summer of 2015, the Property was still incomplete, but it was agreed that LG would continue to finish construction of the Property.

104.    The Amended Demand alleges that by the Summer of 2016, the Property was "riddled with significant construction defects due to, among other things," LG's faulty workmanship.  (Ex. B, AWNAC000055.)

105.    In other words, the construction defects caused by LG's faulty workmanship first occurred, at the latest, in 2016, which is prior to the inception of the Allied World CGL Policy.

106.    Accordingly, LG does not potentially face liability in the Arbitration for covered "property damage" that occurred during the Allied World CGL Policy's policy period, and

therefore, Allied World further owes no duty to indemnify LG for the Arbitration under the Allied World CGL Policy.

107. Further, even if LG faced liability in the Arbitration for "property damage" caused by an "occurrence" and the "property damage" occurred during the Allied World CGL Policy's policy period, which it does not, Exclusion b. Contractual Liability, Exclusion j.(5)-(6) Damage to Property, Exclusion k. Damage to Your Product, Exclusion m. Damage to Impaired Property, and the Fungi Or Bacteria Exclusion endorsement exclude coverage for LG under the Allied World CGL Policy for the Arbitration.

108. Accordingly, a real, substantial, and justiciable controversy exists between Allied World and LG with respect to Allied World's rights, duties, and obligations under the Allied World CGL Policy relative to the Arbitration, which is subject to resolution by this Court under 28 U.S.C. §§ 2201 and 2202.

## COUNT II – DECLARATORY JUDGMENT
### No Duty to Indemnify – Allied World Umbrella Policy

109. Allied World incorporates paragraphs 1-108 as though fully restated herein.

110. The Allied World Umbrella Policy potentially provides coverage, in relevant part, only for those sums in excess of the **Retained Limit** that LG becomes legally obligated to pay as damages by reason of liability imposed by law because of **Property Damage** caused by an **Occurrence** and the **Property Damage** occurs during the Allied World Umbrella Policy's **Policy Period**.

111. The Allied World Umbrella Policy only provides coverage in excess of the **Retained Limit**.

112. The **Retained Limit** is defined by the Allied World Umbrella Policy, in relevant part, as the greater of (1) the total applicable limits of **Scheduled Underlying Insurance** and any

applicable **Other Insurance** providing coverage to the **Insured**, or (2) the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

113.     **Scheduled Underlying Insurance** is defined by the Allied World Umbrella Policy, in relevant part, as the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming part of the Allied World Umbrella Policy.

114.     The Allied World Umbrella Policy shows the Allied World CGL Policy in the Allied World Umbrella Policy's Schedule of Underlying Insurance.

115.     Allied World CGL Policy limits are $1,000,000 per occurrence.

116.     **Self-Insured Retention** is defined by the Allied World Umbrella Policy, in relevant part, as $10,000.

117.     The Allied World Umbrella Policy's total applicable limits and **Self-Insured Retention** have not been exhausted, nor have all applicable **Other Insurance** providing coverage to LG for the Arbitration been exhausted.

118.     **Property Damage** is defined by the Allied World Umbrella Policy, in relevant part, as (1) physical injury to tangible property, including all resulting loss of use of that property; and (2) loss of use of tangible property that is not physically injured.

119.     **Occurrence** is defined by the Allied World Umbrella Policy, in relevant part, as an accident.

120.     LG seeks coverage under the Allied World Umbrella Policy for the Arbitration.

121.     The Amended Demand alleges that pursuant to the LG Contract, LG would serve as the general contractor for construction of the Project.

122.     The Amended Demand alleges, however, that LG failed to (1) "properly construct the Project in accordance with the Project Contract Documents;" (2) "properly construct the Project in accordance with the industry standards, customs, and practice;" (3) "properly manage the scheduling and sequencing of the trades for the Project;" (4) "properly coordinate the construction and installation of materials and equipment with the Project Architect, Morgante-Wilson Architects, Ltd.;" (5) "provide, coordinate, and install the proper materials for the Project;" (6) "properly manage the overall work;" and (7) "complete the Project as required." (Ex. B, AWNAC000055-56.)

123.     As a result of LG's alleged faulty workmanship and defective construction of the Project, the Amended Demand alleges that "the Project is riddled with multiple defects and unfinished work affecting virtually every room and every system in the home."  (Ex. B, AWNAC000056.)

124.     Consequently, Ricketts claims that LG breached the LG Contract, and Ricketts seeks to hold LG liable for the costs to repair and/or remediate the construction defects caused by LG's and its subcontractors' faulty workmanship in constructing the Project.

125.     The Amended Demand alleges damage only to LG's work in constructing the Property.  The Amended Demand does not allege damage to any other property.

126.     Costs to repair and/or replace an insured's faulty workmanship and/or defective construction does not constitute **Property Damage** caused by an **Occurrence**, as those terms are defined by the Allied World Umbrella Policy.

127.     Accordingly, the Arbitration does not seek to hold LG liable for **Property Damage** caused by an **Occurrence**, and therefore, Allied World owes no duty to indemnify LG for the Arbitration under the Allied World Umbrella Policy.

128.    The Allied World Umbrella Policy incepted on January 24, 2018, and terminated on January 24, 2019.

129.    The Amended Demand alleges that upon Ricketts moving into the Property in the Summer of 2015, the Property was still incomplete, but it was agreed that LG would continue to finish construction of the Property.

130.    The Amended Demand alleges that by the Summer of 2016, the Property was "riddled with significant construction defects due to, among other things," LG's faulty workmanship.  (Ex. B, AWNAC000055.)

131.    In other words, the construction defects caused by LG's faulty workmanship first occurred, at the latest, in 2016, which is prior to the inception of the Allied World Umbrella Policy.

132.    Accordingly, LG does not potentially face liability in the Arbitration for covered **Property Damage** that occurred during the Allied World Umbrella Policy's **Policy Period**, and therefore, Allied World further owes no duty to indemnify LG for the Arbitration under the Allied World Umbrella Policy.

133.    Further, even if LG faces liability in the Arbitration in excess of the **Retained Limit** for **Property Damage** caused by an **Occurrence** and the **Property Damage** occurred during the Allied World Umbrella Policy's **Policy Period**, which it does not, the Fungus Exclusion; Contractors' Limitation exclusion; Exterior Insulation and Finishing Systems (EFIS) Exclusion; Residential Construction Operations Exclusion (With Limitation for Scheduled Projects); Exclusion C. Contractual Liability; Exclusion D. Damage to Impaired Property or Property Not Physically Injured; Exclusion E.(5)-(6) Damage to Property; and Exclusion F.

Damage to Your Product exclude coverage for LG under the Allied World Umbrella Policy for the Arbitration.

134.    Accordingly, a real, substantial, and justiciable controversy exists between Allied World and LG with respect to Allied World's rights, duties, and obligations under the Allied World Umbrella Policy relative to the Arbitration, which is subject to resolution by this Court under 28 U.S.C. §§ 2201 and 2202.

**PRAYER FOR RELIEF**

**WHEREFORE**, Allied World respectfully requests that this Court enter judgment in Allied World's favor and against Defendants as follows:

a.    That Allied World owes no duty to indemnify LG under the Allied World CGL Policy for the Arbitration;

b.    That Allied World owes no duty to indemnify LG under the Allied World Umbrella Policy for the Arbitration;

c.    That LG and Ricketts and the Trust are bound by the final judgment and/or order entered by this Court; and

d.    For such other relief as this Court deems just and proper.

Date: June 28, 2024                    Respectfully submitted,

                                       ALLIED WORLD NATIONAL
                                       ASSURANCE COMPANY


                               By:    /s/ Ian A. Cooper
                                      Ian A. Cooper
                                      NICOLAIDES FINK THORPE MICHAELIDES
                                      SULLIVAN LLP
                                      10 S. Wacker Drive, Suite 3600
                                      Chicago, IL 60606
                                      Tel: 312.585.1400

icooper@nicolaidesllp.com

and

William O. Williams, III
NICOLAIDES FINK THORPE MICHAELIDES
SULLIVAN LLP
600 17th Street, Suite 2700S
Denver, CO 80211
Tel.: 720.894.0880
wwilliams@nicolaidesllp.com

*Attorneys for Allied World National Assurance Company*